IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-150-D

IN RE: SUBPOENAS ISSUED TO )
LYNNE T. ALBERT, RICHARD J. )
IGOU, AND RICHARD S. SAIFERT )
)
IN THE MATTER OF ARBITRATION )
BETWEEN SHEPHERD, et al., )
) ORDER
Plaintiffs, )
)
v. )
)
LPL FINANCIAL LLC, )
)
Defendants )

This matter is before the court on the motion of non-parties Lynne T. Albert, Richard J. Igou, and Richard S. Zaifert ("Arbitrators" or "Movants") to quash subpoenas duces tecum issued to them by Holton B. Shepherd, Bonnie L. Shepherd, Robert C. Young, and 109 U-Pull-It, Inc. ("Plaintiffs"). [DE-23]. Plaintiffs have responded in opposition to the Arbitrators' motion to quash [DE-31], and with leave of court the Abitrators filed a reply [DE-34] and Plaintiffs filed a sur-reply [DE-36]. All matters raised in the briefing are ripe for decision. For the reasons set forth below, the motion to quash is allowed.

**I. BACKGROUND**

The subpoenas at issue relate to Plaintiffs' petition to vacate an arbitration award in a proceeding in which the Movants served as arbitrators (the "Underlying Arbitration"). [DE-1-2] at 12, 25–27. Defendant, LPL Financial, LLC ("LPL Financial") is regulated by the Financial Industry Regulatory Authority ("FINRA"), and the Underlying Arbitration proceeded before its subsidiary, FINRA Dispute Resolution. [DE-1-2] at 13. FINRA is a private not-for-profit

corporation and a self-regulatory organization registered with the United States Securities and Exchange Commission as a national securities association, and FINRA Dispute Resolution administers a dispute resolution forum in the securities industry. [DE-24] at 2. Individuals who serve as arbitrators on FINRA panels are independent contractors and receive payment of $300 per hearing session. *Id.*

On July 9, 2015, Plaintiffs initiated the Underlying Arbitration seeking over $1.3 million in damages against LPL Financial LLC ("LPL Financial"). [DE-1-2] at 14, 20–21. Plaintiffs asserted that an employee of LPL Financial inappropriately invested Plaintiffs' brokerage accounts in "risky and unsuitable investments" resulting in substantial losses. *Id.* at 40, 44. Before the Underlying Arbitration began, FINRA provided each party with a list of arbitrator candidates and the Arbitrator Disclosure Report for each candidate. [DE-24] at 3 (citing [DE-16-3, -16-4]). Each party was asked to rank the arbitrators in order of preference, after which FINRA selected three arbitration panelists. *Id.* The Underlying Arbitration panel consisted of Lynne T. Albert ("Albert"), Richard J. Igou ("Igou"), and Richard S. Zaifert ("Zaifert"). [DE-1-2] at 25–27. On December 2, 2016, upon the conclusion of the arbitration proceeding the Arbitrators entered a unanimous award in favor of Plaintiffs in the amount of $119,117.00 ("Award"). *Id.* at 20–27.

On February 28, 2017, Plaintiffs filed a motion to vacate the Award in North Carolina state court, which was removed to this court on March 30, 2017. [DE-1, -1-2]. Plaintiffs allege among other things that Albert demonstrated evident partiality in favor of LPL Financial when she failed to disclose a previous relationship with an attorney representing LPL Financial in the Underlying Arbitration ("Defense Counsel"). *Id.* at 12–18. Specifically, Plaintiffs claim the purported relationship consisted of serving as an arbitrator in two prior arbitration proceedings in which

2

Defense Counsel or his law firm represented a party. [DE-31] at 5–6. The first of these arbitrations occurred in 2004, and Defense Counsel's client won a unanimous award before a three-person arbitration panel which included Albert ("2004 Arbitration"). [DE-1-2] at 15–16. The second arbitration occurred in 2014, and involved attorneys from Defense Counsel's law firm ("2014 Arbitration"). [DE-31] at 6. The party represented by Defense Counsel's law firm won a unanimous award before a three-person panel in the 2014 Arbitration. [DE-30-2].

Albert did not disclose on the arbitrator disclosure checklist forms the two arbitrations in which she served as a panelist and Defense Counsel or his law firm appeared before her. [DE-31] at 5–6. Consequently, Plaintiffs claim Albert made two false statements on the forms by incorrectly affirming the answers on the disclosure checklists were complete and accurate, when in fact the checklists omitted the relationship with Defense Counsel. *Id.* Albert did, however, disclose this relationship on at least two other disclosure checklists in subsequent arbitration proceedings involving Defense Counsel and Plaintiffs' attorney ("June and July 2016 Arbitrations"). [DE-34] at 5. In the June and July 2016 Arbitrations, Albert's disclosure checklist forms indicated she "had . . . professional, social, or other relationships or interactions with counsel for any of the parties in [the] arbitration or their law firms." *Id.* Albert clarified these answers by explaining she had served on prior FINRA panels involving Plaintiffs' attorney and Defense Counsel. [DE-35-1].

Plaintiffs served document subpoenas dated June 5, 2017, on each of the Arbitrators, seeking (1) copies of the answers filed by any respondent in a listing of specifically-identified FINRA Dispute Resolution matters; and (2) copies of the answers filed by any respondent in any other FINRA Dispute Resolution matters where any of the Arbitrators presided and certain

3

counsel, including Defense Counsel, represented LPL Financial. [DE-25-1 through -25-3]. In response to the subpoenas, the Arbitrators filed the instant motion to quash the subpoenas. [DE-23].

## II. ANALYSIS

The parties disagree regarding the standard applicable to the instant discovery dispute. The Arbitrators contend that Plaintiffs must demonstrate "clear evidence of impropriety" to justify post-award discovery from an arbitrator. [DE-24] at 4–7. Plaintiffs contend that the relevance standard of Fed. R. Civ. P. 26(b) governs document subpoenas related to the issue of arbitrator bias, and the clear evidence standard is only applicable when a party is seeking to depose an arbitrator or the discovery is aimed at questioning the merits of the arbitrator's decision. [DE-31] at 2–4. The court agrees with the Arbitrators that Plaintiffs must demonstrate clear evidence of impropriety to obtain the requested documents from the Arbitrators.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the instant case. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 458 (4th Cir. 1997) (noting the FAA's applicability to an arbitration involving a brokerage account dispute); *Smith Barney, Inc. v. Bardolph*, 131 N.C. App. 810, 812, 509 S.E.2d 255, 257 (1998) (stating that brokerage agreements "fall within the broad construction" of the FAA). This is so despite Plaintiffs' assertion of both federal and state law as grounds for vacatur. *See Carpenter v. Brooks*, 139 N.C. App. 745, 749, 534 S.E.2d 641, 645 (2000) (concluding the FAA rather than the North Carolina Uniform Arbitration Act applied to a motion to vacate an arbitration award related to a brokerage contract, which implicated interstate commerce). Once applied, "[t]he 'body of federal substantive law' generated by

4

elaboration of [the] FAA . . . is equally binding on state and federal courts." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984)).

In proceedings under the FAA, the Federal Rules of Civil Procedure govern except to the extent Title 9 provides other procedures. Fed. R. Civ. P. 81(a)(6)(B); *see Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999) (recognizing that "Rule 81 [] would authorize a district court, in enforcing an arbitration agreement, to 'order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement.'") (citation omitted). The Federal Rules generally allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Notwithstanding, the weight of persuasive case law demands a heightened showing of "clear evidence of impropriety" to obtain discovery from a non-party arbitrator.[1] *See Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 32 (2d Cir. 2004) (concluding discovery into potential arbitrator bias was not appropriate where the party "has not presented the 'clear evidence of impropriety' we have held necessary before granting post-award discovery into potential arbitrator bias.") (citing *Andros v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir. 1978)); *Van Pelt v. UBS Fin. Servs.*, No. 3:05-CV-477, 2006 WL 1698861, at *2 (W.D.N.C. June 14, 2006) (applying the clear evidence of impropriety standard and denying discovery of an arbitrator's employment records to determine whether he failed to disclose a

---

[1] It is noteworthy that even under the Federal Rules, a subpoena served on a non-party receives some level of heightened scrutiny, wherein courts "will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). Undue burden may be found where a subpoena is directed at information held by a non-party and the information is available from another source. *See Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at * 1 (E.D.N.C. Aug. 8, 2016) (citing *In re Subpoena of Daniel Drasin*, No. 13-CV-00304, 2014 WL 585814, at *6 (D. Md. Feb. 12, 2014)).

5

material fact); *see also TransAtlantic Lines LLC v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, 253 F. Supp. 3d 725 (S.D.N.Y. 2017) ("In order to take discovery from the ADR panel itself, a litigant must present 'clear evidence of impropriety,' such as bias or corruption.") (citation omitted).

While the Fourth Circuit Court of Appeals has not squarely addressed the issue, it has recognized that

> there exists a strong federal policy favoring arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Concomitant with this federal policy favoring arbitration is the belief that the arbitration process, as the forum selected by the parties for the resolution of their dispute, must operate with a minimum of judicial supervision. The arbitration process represents a faster and less expensive alternative to litigating disputes in court. As a result, the arbitration process must not become but the first step in the litigation process; to do so would be to defeat the very purposes for which the parties chose arbitration as a method of dispute resolution.

*In re Nat'l Risk Underwriters, Inc.*, 1989 WL 100649, at *3, 884 F.2d 1389 (4th Cir. 1989) (per curiam). Other courts, including a district court within the Fourth Circuit, have concluded that "the Federal Rules of Civil Procedure do not apply to post hoc questioning of arbitrators and [] any discovery into arbitrator bias is handled pursuant to judicial supervision and only then in the limited situation where the movant presents clear evidence of impropriety." *Van Pelt*, 2006 WL 1698861, at *2 (citing *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 430–31 (9th Cir. 1996)); *see Admin. Dist. Council 1 of Ill. of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO v. Masonry Co.*, 941 F. Supp. 2d 912, 916 (N.D. Ill. 2012) ("If the losing party in arbitration is able to compel the arbitrators to submit to discovery in supplemental litigation, the delay and costs associated would undermine the streamlined and economical nature of the arbitration process. Other courts have recognized the potential devaluation of the arbitration process by allowing such

6

discovery.") (citing *In re Nat'l Risk Underwriters, Inc.*, 1989 WL 100649, at *4). "This limitation on [arbitrator] discovery pertains even though it may well be very difficult to prove actual bias without discovery." *Van Pelt*, 2006 WL 1698861, at *2 (citations omitted).

Plaintiffs attempt to limit application of the clear evidence standard to cases where a party is seeking to depose an arbitrator or the discovery is aimed at questioning the merits of the arbitrator's decision. However, such a narrow view would not support the strong federal policy favoring arbitrability, and the cases relied upon by Plaintiffs are largely distinguishable. For example, Plaintiffs offer *Antietam Indus., Inc. v. Morgan Keegan & Co.*, for the proposition that "information which may tend to show that one of the arbitrators failed to disclose or misrepresented information which beared [sic] upon his neutrality . . . is relevant to [a] motion to vacate [an] arbitration award." No. 6:12-CV-1250-ORL-36, 2012 WL 4513763, at *2 (M.D. Fla. Oct. 2, 2012). Importantly, the clear evidence of impropriety standard was not implicated in *Antietam* because the subpoena was issued by the defendant to FINRA and not the arbitrators, and the plaintiff, rather than the subpoena recipient, filed a motion to quash as well as a motion for a protective order. *Id.* at 1. Therefore, in ruling on the motion for protective order, the court applied the good cause standard under Fed. R. Civ. P. 26(c) and also found the plaintiff lacked standing to bring the motion to quash. *Id.* at 1–2. Plaintiffs also cite *T. McGann Plumbing, Inc. v. Chi. Journeymen Plumbers' Local 130 U.A.*, which holds that an arbitrator can be deposed when she "possesses directly relevant and probative evidence concerning the issue on which the party is basing its challenge, so long as the testimony . . . does not question the correctness of the [arbitrator's] decision." 522 F. Supp. 2d 1009, 1014 (N.D. Ill. 2007). However, *McGann* did not involve allegations of arbitrator bias through nondisclosures and thus is inapposite. Plaintiffs rely

7

on *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 67 (2d Cir. 2003), for the proposition that "arbitrators may be deposed regarding claims of bias or prejudice," but the court also acknowledged "the well-established rule that arbitrators may not be deposed absent 'clear evidence of impropriety.'" There is nothing in *Hoeft* to suggest a different standard applies when considering the propriety of obtaining written discovery from an arbitrator.

The court finds the *Van Pelt* case to be on point and persuasive. In *Van Pelt*, the court applied the clear evidence of impropriety standard when a party claimed bias and sought post-award discovery of the prior employment records of an arbitrator. 2006 WL 1698861, at *2. A party claimed evident partiality because the arbitrator may have been biased in an arbitration that revolved around an involuntary termination. *Id.* at 3. The arbitrator had failed to disclose whether he voluntarily retired two months earlier from his previous employer or did so to avoid being terminated. *Id.* The court applied the clear evidence of impropriety standard, and ruled the "asserted need to investigate further" into "the appearance of bias [was] remote, circular, and speculative, and [was] insufficient on its face" to justify a subpoena. *Id.* Here, just as in *Van Pelt*, Plaintiffs allege "evident partiality" from one or more of the Arbitrators as grounds to vacate the Underlying Arbitration Award, [DE-1] at 2, and Plaintiffs' stated reason in subpoenaing the documents in question is "to determine the extent and severity of the problems" arising from Albert's nondisclosures and "to ensure a fair and just resolution to this matter." [DE-31]. In other words, similar to the allegations in *Van Pelt*, Plaintiffs seek to further examine whether Albert was in fact biased, and the Underlying Arbitration was fair. *See Van Pelt*, 2006 WL 1698861, at *3. To apply the relevance standard of Rule 26(b) in such circumstances would subvert the theory of quasi-judicial immunity for arbitrators, which "attaches to 'all acts within the scope of the arbitral

8

process'" and would allow an arbitrator to "be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit," which would ultimately serve to undermine the arbitration process. *Howland v. U.S. Postal Serv.*, 209 F. Supp. 2d 586, 593 (W.D.N.C. 2002) (citations omitted). Accordingly, the court will apply the clear evidence of impropriety standard to the instant dispute.

Plaintiffs argue they have presented clear evidence of impropriety based on Albert's two nondisclosures. [DE-36] at 4–6. The Second Circuit's decision in the *Andros* case is instructive here.[2] The *Andros* court determined that an arbitrator's undisclosed professional relationship with one of the parties was insufficient to establish clear evidence of impropriety and did not justify discovery into the issue. 579 F.2d at 701–02. The arbitrator in *Andros* knew the president of one of the companies involved in the arbitration, as both men previously served on 19 arbitration panels together. *Id.* at 701. Despite claims by the opposing side that the president and arbitrator were "close personal friends," the lower court found the relationship was professional in nature because the interactions were limited to arbitration panels and other social functions related to arbitrations. *Id.* at 700–02. Moreover, the arbitrator had no financial stake or other interest in the outcome of the arbitration. *Id.* Based on these facts, the Second Circuit affirmed the lower court's decision and found no "clear evidence of impropriety" was presented to support an evidentiary hearing, to compel discovery, or to vacate the ruling. *Id.* at 702. Similarly here, the undisclosed relationship is strictly professional—a lawyer appearing before an arbitrator—and the circumstances surrounding Albert's nondisclosures do not give the impression of clear impropriety: Plaintiffs won the Underlying Arbitration with a unanimous award from all three panelists, including Albert,

---

[2] The Fourth Circuit Court of Appeals has previously characterized the decisions of the Second Circuit as "preeminent in arbitration law[.]" *Glass*, 114 F.3d at 456.

9

[DE-1] at 1; and instead of exhibiting behavior consistent with wrongdoing, such as hiding her interactions with Defense Counsel, Albert disclosed this relationship in the June and July 2016 Arbitrations almost six months before Plaintiffs first alleged any impropriety by the Arbitrators in the Underlying Arbitration, [DE-32] at 3–4.

To allow discovery of an arbitrator under these circumstances would "encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship" and "increase the cost and undermine the finality of arbitration, contrary to the purpose of the United States Arbitration Act of making arbitration a swift, inexpensive, and effective substitute for judicial dispute resolution." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir. 1983); *see Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010) ("Post-arbitration discovery is rare, and courts have been extremely reluctant to allow it. It is often a 'tactic' employed by disgruntled or suspicious parties who, having lost the arbitration, are anxious for another go at it. Not surprisingly, requests to take discovery of arbitrators have been 'repeatedly condemned.'") (internal footnote omitted) (collecting cases). Accordingly, Plaintiffs have failed to demonstrate clear evidence of impropriety to justify the discovery sought from Albert.

With respect to Igou and Zaifert, Plaintiffs present no evidence of impropriety, but rather argue that the alleged impropriety by Albert makes it necessary to "double-check" the other two panelists for additional nondisclosures. [DE-31] at 6–7. Such reasoning is in direct conflict with a policy favoring the finality of arbitration and does not establish the requisite clear evidence of impropriety to justify the discovery sought from Igou and Zaifert.

## III. CONCLUSION

For the reasons set forth above, the motion to quash [DE-23] is allowed.

SO ORDERED, the 1st day of November 2017.

*Robert B. Jones, Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge